UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
FELIX JEAN,
              Plaintiff,

      -against-                             **MEMORANDUM & ORDER**

THE CITY OF NEW YORK,                         09 CV 801 (RJD)
DETECTIVE DANIEL HOWARD and
DETECTIVE ANTOINE MALLOY,
              Defendants.
-------------------------------------------------------X
DEARIE, District Judge.

      Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for false arrest, false imprisonment and malicious prosecution. In addition, he asserts claims of wrongful incarceration and negligent infliction of emotional distress. Defendants move for summary judgment. For the reasons set forth below and on the record at oral argument, defendants' motion is granted in its entirety.

## BACKGROUND[1]

      Plaintiff, a school bus driver, was arrested in November 2007 for rape and endangering the welfare of a child based on allegations that he played pornographic movies and had sex with his former girlfriend's daughter on multiple occasions when she was twelve years old. The alleged abuse was first reported by an unnamed source to the Child Protective Services State Central Register on November 2, 2007. (Pla. Ex. 9, Pla. Dep. Ex. 1, Intake Report.) According to the source, the child told her aunt of the abuse during an extended stay with her, and although the child's mother was aware of the abuse, the mother failed to protect the girl. (Id.) The case was assigned to Queens Administration for Children's Services ("ACS") caseworker Binu

---

[1] As defendants' argue in their Reply, plaintiff's opposition to defendants' Local Rule 56.1 Statement rests largely on self-serving statements and speculation. Plaintiff has failed to raise any genuine issue with respect to the following facts.

Daniel and forwarded to New York City Police Detective Daniel Howard. (Def's Ex. D, 11/3/07 Complaint – Follow Up Informational Report.)

Detective Howard telephoned the child's aunt, who lived in Massachusetts, on November 2 and November 3, but he was unable to reach her.[2] (Def's Ex. H, 11/3/07 Complaint – Follow Up Informational Report.) Detective Howard also could not locate the child at her last known address. On November 8, 2007, he obtained another address from caseworker Daniel. Two days later, on Saturday, November 10, 2007, Detective Howard went to that address with his partner, Detective Antoin Malloy, and spoke to the child's mother. The mother initially said her daughter was not home. She then said that her daughter was in Brooklyn but would not say where. After Detective Howard informed the mother that her daughter could be removed if she did not cooperate, the mother made a phone call and told him that her daughter was with her sister in Queens and would be home in 15 minutes. (Howard Dep. at 53; Def's Ex. J, 11/14/07 Complaint – Follow Up Informational Report.)

When the child arrived, Detective Howard first discussed with her the importance of being honest and then asked her whether she had ever had sexual intercourse. Both detectives noted the mother's unusual behavior during the questioning—she repeatedly rocked back and forth and said "say no." (Howard Dep. at 55; Malloy Dep. at 32.) After the mother left the room, the child told Detective Howard that, beginning when she was twelve years old, her mother's friend Felix had sex with her four times in the apartment while her mother was at work. The

---

[2] When Detective Howard ultimately reached the child's aunt, she confirmed that the victim said her mother's boyfriend would play pornographic movies and have sex with her while her mother was not home. (Howard Dep. at 30.) He does not remember, however, whether he spoke to her before or after plaintiff's arrest. (Id. at 29.)

2

last time was in November 2006. On each of those occasions, he would first play pornographic movies of people having sex. (Howard Dep. at 57, 61, 62, 64; Def's Ex. J, 11/14/07 Complaint – Follow Up Informational Report.) The child's mother denied knowing who Felix was, then said that he was a friend of a friend but had moved to Florida four years earlier, and finally identified Felix as Felix Jean. She insisted, however, that her daughter's allegations of abuse were lies. (Howard Dep. at 103.) The girl called Detective Howard later that same day and recanted, but Detective Howard "felt that her mother put her up to" recanting and that the mother was more concerned about plaintiff than about her daughter. (Id.)

Detective Howard continued his investigation by visiting the nearby bus company where the mother told him that plaintiff worked to confirm plaintiff's employment. (Howard Dep. at 74; Def's Ex. J, 11/14/07 Complaint – Follow Up Informational Report.) He also verified that plaintiff was fingerprinted for a job application with the bus company and had an active New York State driver's license.

On November 13, 2007, at 11:30 a.m., Detective Howard telephoned caseworker Daniel at ACS to update him on the investigation. (Pla. Dep. Ex. 6., Investigation Progress Notes at 16.) He reported the child's allegations against plaintiff as well as her recantation. (Id.) Detective Howard also told Daniel that he believed the child was afraid of the mother and that the mother had threatened to send the child back to Haiti if she reported the abuse. (Id.) He informed Daniel that plaintiff would be arrested later that day. (Id.)

That afternoon, Detective Howard brought a Department of Vehicles photograph of plaintiff to the child at school. He did not question her again, however, about the allegations she had recanted. She positively identified plaintiff from the photograph as Felix Jean. (Howard Dep. at 137; Def's Ex. N, 11/14/07 Complaint – Follow Up Informational Report.) Detectives

3

Howard and Malloy proceeded to the bus company at approximately 1:30 p.m. Plaintiff arrived at approximately 2:45 p.m. and was arrested. (Id. at 79; Def's Ex. O, 11/14/07 Complaint – Follow Up Informational Report.)

During that time, at approximately 2:30 p.m., caseworker Daniel met with the child at school. Daniel's Investigation Progress Notes of his meeting with her read: "CPS noticed that each time she tells a lie she would either put her head down or smile. Child appears to be very used to lying and would often get confused with her answers." (Pla. Dep. Ex. 6, Investigation Progress Notes at Bates no. 16.) Daniel did not note, however, and could not recollect at the time of his deposition, either the subject matter of the questions he had asked during that visit (Daniel Dep. at 33-34), or whether he shared his observations regarding the child's truthfulness with Detective Howard when he called at 4:15 p.m. that day to tell him that plaintiff had been arrested. (Daniel Dep. at 34; Pla. Dep. Ex. 6, Investigation Progress Notes at Bates no. 17.) Detective Howard informed Daniel that child would have to be interviewed by the District Attorney and that the mother might be questioned as well "because she did everything in her power to not disclose information regarding Felix Jean." (Pla. Dep. Ex. 6, Investigation Progress Notes at Bates no. 17.)

Daniel's notes from an earlier visit he made to the mother and child on November 8, 2007, indicate that he also had reservations about the girl's mental capacity. He observed that the child was "delayed in her responses" and "often did not answer the questions that were asked." (Pla. Dep. Ex. 6, Investigation Progress Notes at Bates no. 13.) In addition, his notes indicate that the child's mother "knows that [she] is delayed but believes this is due to her language barrier and nothing else." (Id.) The notes, however, do not include any entries indicating that he shared these concerns with Detective Howard. (Howard Dep. at 27-29.)

4

A few hours after plaintiff's arrest, Detective Howard picked up the child and her mother for questioning. When Detective Howard told the mother that plaintiff had been arrested, she reacted by throwing her pocketbook in the air and lying down in the street. (Id. at 95.) At that point, Detective Howard was not surprised by her reaction because it was consistent with his belief that "she didn't care about her daughter." (Id.)

When the child was interviewed by an Assistant District Attorney, she repeated her original allegation that plaintiff played pornographic movies and had sex with her four times while her mother was at work. (Def's Ex. Q at ¶ 16, 11//13/07 Special Victims Early Case Enhancement Report.) The mother asked about plaintiff's bail. (Howard Dep. at 103.) Plaintiff remained in custody.

Detective Howard telephoned caseworker Daniel on November 15, 2007, to inquire about whether the girl had been removed from the mother's custody. (Pla. Dep. Ex. 6, Investigation Progress Notes at Bates no. 16.) Caseworker Daniel's notes indicate that Detective Howard was shocked that she had not been. (Daniel Dep. at 40; Pla. Dep. Ex. 6, Investigation Progress Notes at Bates no. 16.) According to Daniel, however, because plaintiff had been arrested and incarcerated, removal was unnecessary. (Daniel Dep. at 40.)

The case was assigned to Assistant District Attorney Mina Malik. ADA Malik contacted the child's mother and asked that the girl be brought in for a medical exam and an additional interview, but the mother refused to comply despite being subpoenaed numerous times. (Malik Dep. at 10.) The mother also told ADA Malik that she would not allow her daughter to testify under any circumstances. (Id. at 13.) Two and a half months after ADA Malik's initial request,

5

on January 17, 2008, the girl was physically examined at the Child Advocacy Center.[3] (Id. at 28-29.) There were positive medical findings of past blunt force trauma and penetration to the her vagina. (Id. at 37.)

According to ADA Malik, plea negotiations with plaintiff were ongoing between November 2007 and March 2008. (Id. at 39, 84.) Because the mother failed to comply with the subpoena directing her daughter to appear before the grand jury, however, no grand jury action was taken and, as required by law, plaintiff was released from custody on March 31, 2008. (Id. at 49.) ADA Malik endeavored to locate the mother and child through their last known address, the United States Postal Service and the Department of Education. (Id. at 30-31.) Nevertheless, on October 6, 2008, the criminal case against plaintiff was dismissed because the complaining victim child could not be located. (Id. at 36-37.)

## DISCUSSION

The required elements of a Section 1983 claim for false arrest or false imprisonment are essentially the same as those for a New York state law claim of false arrest or false imprisonment: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir.1995); Weintraub v. Board of Educ., 423 F. Supp. 2d 38, 53 (E.D.N.Y. 2006). Confinement based on probable cause is privileged, and "probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a

---

[3] No subpoena was issued requiring the mother to take the child to be examined. (Malik Dep. at 28.)

person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer, 53 F.3d at 119 (internal quotation marks omitted).

The essential dispute in this case is whether probable cause existed for plaintiff's arrest and prosecution. Plaintiff challenges the existence of probable cause on the grounds that the child's recantation of her accusation, her mother's insistence that the abuse did not occur, the fact that plaintiff and child knew each other, and the child's delay in reporting the abuse taken together cast doubt on the veracity of the child's accusations such that further investigation and corroboration were required to establish probable cause. Plaintiff also asserts that because Detective Howard failed to adequately determine the child's level of competency and understanding of the truth, her allegations cannot be the basis for probable cause. Finally, he attacks probable cause on the ground that Detective Howard must have been aware of ACS caseworker Daniel's assessment that the child was mentally delayed and accustomed to lying. Absent a genuine factual issue with respect to probable cause, plaintiff's false arrest and false imprisonment claims must be dismissed. Jenkins v. City of New York, 478 F.3d 76, 88 (2d Cir. 2007) ("under both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable."); Singer, 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").[4]

Unless there are "'circumstances that raise doubt as to the victim's veracity,' a victim's

---

[4] The parties' familiarity with the well-established summary judgment standards is assumed. See generally Fed. R. Civ. P. 56; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Sledge v. Kooi, 564 F.3d 105, 108 (2d Cir. 2009) (record to be construed in the light most favorable to the non-moving party, all reasonable inferences must be drawn in his favor, and all ambiguities resolved his way).

7

report of a crime is generally enough, by itself, to establish probable cause." Koester v. Lanfranchi, 2008 WL 3842253, *1 (2d Cir. 2008) (quoting Singer, 63 F.3d at 119.). Even so, "the officer has a duty to assess the reliability of the victim and, if circumstances call into doubt the victim's veracity, to investigate the allegations and corroborate them." Jovanovic v. City of New York, 2006 WL 2411541, *7 (S.D.N.Y. 2006). "The most common situation in which such doubts arise is when there exists a prior relationship between the victim and the accused that gives rise to a motive for a false accusation." Mistretta v. Prokesch, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998). Nevertheless, "when a 'victim precisely identifies the alleged perpetrator of a crime and there is independent corroborative evidence to support at least some of the victim's assertions, a person of reasonable caution is warranted in believing that an offense has been committed by the alleged perpetrator.'" Brodie v. Fuhrman, 2010 WL 1189347, *6 (E.D.N.Y. 2010) (quoting Bullard v. City of New York, 240 F. Supp. 2d 292, 298 (S.D.N.Y. 2003)). "'A variety of circumstances might corroborate a putative victim's veracity . . . . such . . . . as (1) the officer's observation of the putative victim's physical injuries, (2) the level of detail and consistency in the putative victim's description of events, [or] (3) the putative victim's identification of the plaintiff by name and physical description.'" Id. (quoting Williams v. Schultz, 2008 WL 4635383, at *9 (N.D.N.Y. 2008)).

The undisputed facts in this case make plain that the child's allegations alone were enough to give rise to probable cause. Detective Howard found the child to be credible based on the way she answered his questions and his experience interviewing victims. (Howard Dep. at 86.) In contrast, the child's mother was evasive and gave conflicting information regarding the child's whereabouts, first stating that she was not home, then stating that she was in Brooklyn, and finally, after making a phone call, stating that she was with a relative in Queens and would

8

be home shortly. Furthermore, when Detective Howard questioned the child, her mother repeatedly told her to deny any sexual abuse. The child's mother was again evasive when she was asked who Felix was, first stating that she did not know who he was, and then stating that he was a friend of her girlfriend and that the two had moved to Florida four years earlier, before admitting that his name was Felix Jean.

In addition, the child's recantation was not unusual in Detective Howard's experience (Howard Dep. at 103), nor was it unexplained given the mother's threat to send the girl back to Haiti if she reported the abuse. In light of these circumstances, the child's failure to report the crime did not undermine her credibility or undercut probable cause based on her allegations alone. Rather, Detective Howard had ample grounds, given the mother's obvious dissembling, for discounting her assertions that her daughter's accusations were false. In any case, even if the child's allegations themselves were not adequate to give rise to probable cause, her detailed and consistent description of the abuse, both to her aunt and to the authorities, and her identification of plaintiff by name and photograph corroborated them.

Nevertheless, plaintiff challenges the adequacy of probable cause on the ground that Detective Howard must have known of ACS caseworker Daniel's assessment of the child as mentally delayed and accustomed to lying. As recited above, the record reflects that Daniel observed in his notes: "Child appears to be very used to lying and would often get confused with her answers." (Pla. Dep. Ex. 6, Investigation Progress Notes at Bates no. 16.) There is nothing in the entry, however, that indicates the nature of the questioning or her confusion, and Daniel had no recollection of the specifics of the discussion at the time he was deposed. (Daniel Dep. at 31-34.) Moreover, despite caseworker Daniel's practice of "not[ing] what was said or what was spoken about" in phone calls (Daniel Dep. at 29), there is no evidence even suggesting that

9

Daniel conveyed his assessment of the child's truthfulness to Detective Howard, who at the time Daniel made his observations was waiting at plaintiff's place of work to effect the arrest. Nor did Daniel recall having shared the information with Detective Howard when he called later that day. (Id. at 34.) Similarly, there is no evidence that Daniel ever shared his conclusions regarding the child's mental capacity with Detective Howard. (Howard Dep. at 27-29.) Accordingly, Daniel's assessments are not relevant to the question of whether Detective Howard reasonably relied on the child's allegations in arresting plaintiff.

Plaintiff's malicious prosecution claim similarly fails because the prosecution was supported by probable cause. "Probable cause to arrest is sufficient for probable cause to prosecute unless facts come to light between the arrest and arraignment that vitiate the probable cause." Oblio v. City University of the City of New York, 2003 WL 1809471, at *9 (E.D.N.Y. 2003). There are no facts to suggest any post-arrest dissipation of probable cause whatsoever. Rather, the case against plaintiff grew stronger when the child made consistent statements to the Assistant District Attorney, and even stronger after a physical examination of the child revealed positive medical findings of past blunt force trauma and penetration to her vagina. Moreover, plaintiff cannot satisfy the requirement that the prosecution terminated in his favor. The criminal case against him was dismissed because the complaining victim could not be found despite significant efforts to locate her. The child's disappearance is disturbing, to say the least, and the dismissal of the case as a consequence cannot be considered to indicate plaintiff's innocence. Murphy v. Lynn, 118 F.3d 938, 948 (2d Cir. 1997) ("[w]here the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused . . . only when its final disposition is such as to indicate the innocence of the accused."); Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995) ("In the absence of a decision on the merits, the plaintiff must show that the

final disposition is indicative of innocence.").

Finally, there are no grounds for finding plaintiff was wrongfully incarcerated for an unreasonable length of time from November 14, 2007 through March 31, 2008, nor is there any evidence of negligent infliction of emotional distress.

## CONCLUSION

Defendants' motion for summary judgment is granted with respect to each of plaintiff's claims, and the complaint is dismissed. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
      September 21, 2011

                                    s/ Judge Raymond J. Dearie

                                    RAYMOND J. DEARIE
                                    United States District Judge